**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SIDNEY RABINOWITZ, M.D.,<br>*Plaintiff*,<br>v.<br>UNITED HEALTHCARE INSURANCE COMPANY,<br>*Defendant*. | 23-cv-1996 (MEF)(SDA)<br><br>**OPINION and ORDER** |

**Table of Contents**


I. Background

II. Exhaustion of Remedies

III. Merits

- A. Negotiated Rate
- B. Arbitrary and Capricious

IV. Conclusion


* * *

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case.

* * *

A doctor performed surgery and then put in a claim for insurance benefits. But he did not get the full payment he had asked for.

So the doctor sued the insurance company.

The doctor and the insurance company have each now moved for summary judgment.

The doctor's motion is denied in part; the insurance company's motion is granted in part.

* * *

## I. Background

A New Jersey doctor[1] did chest surgery on a patient.[2] See Declaration of Amanda L. Genovese in Support of Motion for Summary Judgment, Exhibit A and B ("Administrative Record") (ECF 45-4, 45-5, 45-6, 45-7, 45-8) at 202. The doctor billed the Patient's insurance company[3] $115,500 for the surgery and associated services. See id. at 217.

After about a year of back-and-forth, the insurance company indicated that it would pay less than that --- $5,299.57 for the surgery. See id. at 319-33, 388-407, 469-505, 557-89.

* * *

The Patient then sued the insurance company, claiming that she was entitled to a larger payment and invoking ERISA, the Employee Retirement Income Security Act. See Second Amended Complaint (ECF 23) ¶¶ 29-36.

After the lawsuit was filed, the parties agreed that she should be substituted out --- and replaced with the doctor who did the surgery. See Stipulation to Substitute Plaintiff ("Substitution Stipulation") (ECF 69).

So as things now stand, it is the doctor who is suing the insurance company.

From here, the doctor[4] is referred to as "the Plaintiff." And the insurance company[5] is called "the Defendant."

The Plaintiff and the Defendant have each cross-moved for summary judgment. See Notice of Motion for Summary Judgment (ECF 42); Defendant UnitedHealthcare Insurance Company's Notice of Motion for Summary Judgment (ECF 45).

---

[1] Sidney Rabinowitz.

[2] Part of the administrative record is sealed to protect the medical privacy of the patient. Her name is not mentioned here. She is referred to as "the Patient."

[3] United Healthcare Insurance Company.

[4] Recall: Sidney Rabinowitz.

[5] Recall: United Healthcare Insurance Company.

The motions are now before the Court.[6]

## II. Exhaustion of Remedies

Start with a threshold issue.[7]

Per the Defendant, this lawsuit cannot get off the ground because the Plaintiff did not properly pursue the various internal appeals he was required to by the governing insurance plan. See Memorandum of Law in Support of Defendant UnitedHealthcare Insurance Company's Motion for Summary Judgment ("Defendant's Brief") (ECF 45-1) at 18-20.

The legal premise of the Defendant's argument: a court cannot "entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990))

The factual premise of the Defendant's argument: the Plaintiff only filed one internal appeal,[8] rather than the two appeals he had to. See Administrative Record at 399-432; id. at 90-98.

---

[6] The ordinary summary judgment rules mainly apply here. Most importantly for this case, a motion for summary judgment should be granted only if "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010) (explaining the distinct role that summary judgment motions play in ERISA cases like this one); Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006) (same).

[7] There had been another threshold issue. Earlier, the Defendant argued that the then-plaintiff (the Patient) did not have standing to sue. See Memorandum of Law in Support of Defendant UnitedHealthcare Insurance Company's Motion for Summary Judgment (ECF 45-1) at 16-17. But after that argument was made, the current Plaintiff (Dr. Rabinowitz) was substituted in for the Patient. So the Defendant dropped its standing objection. See Text Order (ECF 79). And with good reason. The Patient assigned her rights to Dr. Rabinowitz. See Administrative Record at 466-67. That gave Dr. Rabinowitz standing. See N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 372 (3d Cir. 2015).

[8] The Plaintiff only pressed an internal appeal as to the surgical procedure itself. See Administrative Record at 399-432

Against all this, the Plaintiff argues that whether he got through all the appeals or not, he should be treated as if he did --- because the Defendant did not make a fast-enough decision on his first appeal. See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response Brief") (ECF 57) at 19-21.

The Court's conclusion: the Plaintiff has it right.

* * *

ERISA regulations generally require health insurance companies, like the Defendant, to issue a "determination" of an internal appeal "within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan[.]" 29 C.F.R. § 2560.503-1(i)(1)(i).

If an insurance company does not decide an internal appeal by the 60-day cutoff, a plaintiff "shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to [sue in federal court]." Id. § 2560.503-1(l)(1).[9]

Did the Defendant finish out the Plaintiff's internal appeal within the 60 days it was allotted under the regulations?

No. The calendar makes that clear. The Plaintiff filed his first appeal on March 3, 2022. See Administrative Record at 191. The regulations, as noted, then opened a 60-day window. That meant a decision was due by early May. But no decision came down until August. See id. at 178-79, 386.

Bottom line: under the relevant ERISA regulations, the Plaintiff is "deemed" to have exhausted his remedies, because the Defendant did not get him a timely decision.

---

(as to CPT Code 15734). The Plaintiff billed for other things associated with the surgery, too. See id. at 217. As to those, see footnote 11.

[9] See, e.g., Cogdell v. Reliance Standard Life Ins. Co., 169 F.4th 238, 252 (4th Cir. 2026) (following this rule); Wiley v. Prudential Ins. Co. of Am., 201 F. Supp. 3d 176, 181-84 (D.D.C. 2016) (same); Lewis-Burroughs v. Prudential Ins. Co. of Am., 2015 WL 1969299, at *5 (D.N.J. Apr. 30, 2015) (same); cf. Theriot v. Bldg. Trades United Pension Tr. Fund, 850 F. App'x 231, 240-41 (5th Cir. 2021).

* * *

Against this conclusion, the Defendant has two counterarguments. Neither works.

* * *

First, the Defendant notes that it asked for information and documents from the Plaintiff before the 60 days ran out --- and per the Defendant, those requests count as the necessary response to the Plaintiff's appeal. See Defendant UnitedHealthcare Insurance Company's Reply in Further Support of Its Motion for Summary Judgment ("Defendant's Reply Brief") (ECF 62) at 6.

But the regulations require a "determination" within 60 days. See 29 C.F.R. § 2560.503-1(i)(1)(i). A determination is an end-of-the-line decision. See Determination, n., Webster's Third New International Dictionary of the English Language, Unabridged 616 (def. 1) (1976) ("the settling and ending of a controversy"). And asking for more information, as the Defendant did here --- that is a step along the way to a determination. Not a determination itself.[10] Cf. Makdisi v. U.S. Dep't of State, 832 F. Supp. 3d 445, 463-64 (D.N.J. 2026).

* * *

Second, the Defendant argues that the Court should excuse its untimeliness. See Defendant's Reply Brief at 6 n.10.

But the Defendant points to no evidence that explains why getting to a decision on the Plaintiff's first appeal took five months rather than the required two. And the issues here seem to be both narrow and familiar. This is a bread-and-butter dispute about a common-enough medical procedure. See Administrative Record at 399-432.

The basic rule is that insurance companies like the Defendant "are required by the regulations governing the internal review

---

[10] There are times when an insurance company cannot get to a final decision within 60 days. Maybe the insurance company needs to put hands on certain documents. Or maybe there needs to be a hearing. In circumstances like those, the insurance company has options. The deadline can be extended or tolled. See 29 C.F.R. § 2560.503-1(i)(1)(i); id. § 2560.503-1(i)(4). But the Defendant does not make any argument about extension or tolling here.

process to take prompt action . . . and the penalty for failure to meet those deadlines is immediate access to judicial review for the participant." Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 112 (2013).

There is no solid reason to step away from this rule here.[11]

## III. Merits

The Plaintiff's main claim counts as exhausted. See Part II. As to that claim, move to the merits.

### A. Negotiated Rate

Start with the Plaintiff's primary argument.

The gist: (i) the governing insurance plan provides that out-of-network service (which is what the Plaintiff provided here) can be compensated at a negotiated rate; (ii) the Plaintiff and the Defendant negotiated, and agreed on a rate of $92,400; but (iii) the Defendant paid only $5,299.57. See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Brief") (ECF 42-1) at 11-22.

The Defendant does not dispute (i) or (iii). Only (ii) is in play.

That leaves the focus here on one issue: whether the Defendant actually agreed to pay a negotiated rate.

---

[11] As to exhaustion, a final note. Doctors generally communicate the work they do using CPT ("Current Procedural Terminology") codes. Here, the Plaintiff billed the Defendant for the surgery and associated services under four CPT codes: 15734, 13101, 13102, and 99221. See Administrative Record at 217. CPT Code 15734 (for the primary surgical procedure) makes up most of the amount billed and, as noted in footnote 8, was the only CPT code the Plaintiff appealed. The Plaintiff admits that he did not appeal the denial of benefits for CPT Codes 13101, 13102, and 99221. See Plaintiff's Response to Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 in Support of Defendant's Motion for Summary Judgment (ECF 58) ¶ 59. And he provides nothing to excuse that failure to appeal. The Plaintiff did not exhaust his administrative remedies for CPT Codes 13101, 13102, and 99221. The Defendant's motion is therefore granted as to those. The Court will go on to consider the merits (in Part III) only as to CPT code 15734.

It is for the Plaintiff to establish that.[12] But he comes up short. Work through why starting just below.

* * *

After the Defendant first denied benefits, the parties spent about three months exchanging information, but --- no success. See Administrative Record at 470, 557-69, 476-87, 388-98.

The Defendant then brought in a third-party entity to try to get to an agreement. See id. at 194. In late 2021, the third party sent the Plaintiff a one-page "proposal." See id.

The proposal, in relevant part:

> Dr Sidney Rabinowitz agrees to accept the Negotiated Amount [of $92,400] as payment-in-full . . . . This does not constitute, nor should it be construed as, a guarantee of benefit payment by the [Defendant], and will be null and void . . . if [the Defendant] does not accept these Negotiation Terms.

Id.

The Plaintiff says this added up to an agreement by the Defendant to pay $92,400. See Plaintiff's Brief at 11-22.

But where is the agreement? The Plaintiff gave a thumbs up to the $92,400 proposal. See Administrative Record at 194. But there is nothing in the administrative record[13] showing that the Defendant accepted the proposal. And the Defendant's acceptance was a requirement --- the 2021 proposal stated that "it [would] be null and void . . . if [the Defendant] does not accept these Negotiation Terms." Id.

* * *

The Plaintiff sees it differently.

He argues that the just-quoted null-and-void clause is "standard boilerplate" that should be ignored --- and that the Defendant is now obligated to pay the $92,400, because the third party it

---

[12] See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (holding that an ERISA plaintiff has the burden of establishing his "right to benefits").

[13] The Court's review is of the administrative record. See Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010).

hired proposed that amount. See Plaintiff's Response Brief at 4, 27.

But that is not persuasive.

The Court looks to federal common law when deciding what benefits are owed here. See Precopio v. Bankers Life & Cas. Co., 2004 WL 5284512, at *18 (D.N.J. Aug. 10, 2004) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56-57(1987)).

And under federal common law, traditional contractual rules govern. See US Airways, Inc. v. McCutchen, 569 U.S. 88, 102 (2013); Televantos v. Lyondell Chem. Worldwide, 31 F. App'x 63, 66 (3d Cir. 2002); La Fata v. Raytheon Co., 302 F. Supp. 2d 398, 408 (E.D. Pa. 2004), aff'd sub nom. Lafata v. Raytheon Co., 147 F. App'x 258 (3d Cir. 2005).[14]

It has long been the rule that a contract that is explicitly and clearly conditioned on a superior's approval is unenforceable until the superior's approval is granted.

The Supreme Court has so held. See Monroe v. United States, 184 U.S. 524, 527-28 (1902). The Third Circuit, too. See Grammer v. Virgin Islands Corp., 235 F.2d 27, 28-29 (3d Cir. 1956). Other courts have landed on the same conclusion. See, e.g., Cathell v. United States, 46 Ct. Cl. 368, 371 (1911); Texas Co. v. Peacock, 77 Idaho 408, 412-13 (1956). And also the leading treatise. See 12 Williston on Contracts § 35:20 (4th ed. 2026).

In short, the null-and-void clause required sign-off from the Defendant --- but there is no indication that it gave it.[15]

---

[14] The cited ERISA cases use traditional contract rules to interpret one sort of document --- the governing plan. But there is no reason to think that something other than traditional contract rules should be used in ERISA cases when it comes to interpreting other than a plan. And all the more so here --- where the Plaintiff argues that the document to be interpreted operates as a binding contract.

[15] Per the governing insurance plan, the Plaintiff needed a valid agreement with either the Defendant or one of the Defendant's "vendors, affiliates or subcontractors, at [the Defendant's] discretion." Administrative Record at 17. Because the 2021 proposal became "null and void" without the Defendant's sign off, the proposal was not a valid agreement with either the

* * *

Aiming to close the gap, the Plaintiff presses a fallback argument: that the Defendant did accept the 2021 proposal --- implicitly, through partial performance. See Plaintiff's Response Brief at 29.

How? Via an exchange of 2022 letters (discussed in a moment) in which the Defendant agreed to pay $320 for pre-surgical hospital care --- and in doing so, relied on the 2021 proposal. See Administrative Record at 489, 495, 574.

But this argument is doubly flawed.

First, it rests on the idea that the Defendant's agreeing to pay $320 bound it to paying $92,400. But why does that follow? Cf. Henchman's Leasing Corp. v. Condren, 1989 WL 11440, at *4-5 (S.D.N.Y. Feb. 8, 1989) (holding that cashing a $10,000 check was not agreeing through partial performance to pay the full $3.3 million amount).

Second, and more importantly, when the Defendant agreed to pay $320 for the pre-surgical care, it also told the Plaintiff that it was not going to pay anything more than that. That is not agreeing to pay $92,400. It is the opposite.

Break things down to see the point.

Originally, the Plaintiff billed for pre-surgical hospital care[16] ($400) and the primary surgical procedure[17] ($97,000). See Administrative Record at 217

Recall that the 2021 proposal listed $92,400 as the negotiated rate. See id. at 194. That amount, if accepted, was to be the negotiated payment for both the pre-surgical care and the surgery. See id.

---

Defendant or one of its third parties. See Administrative Record at 194.

16 Billed as CPT Code 99221. See Administrative Record at 217. The Plaintiff did not exhaust his remedies as to that code. See footnote 11.

17 Billed as CPT Code 15734. See Administrative Record at 217. The Plaintiff is deemed to have exhausted his remedies on that. See Part II.

After the proposal was approved by the Plaintiff, the Defendant sent a letter to the Patient and a letter to the Plaintiff. Id. at 489, 574. Those two letters are what the Plaintiff hangs his partial performance argument on.

In the first letter, the Defendant indicated that the amount "allowed" would be $320 for the pre-surgical care and the amount "allowed" would be $0 for the surgery. See id. at 489.

In the second letter, the Defendant indicated that the amount "allowed" would be $320 for the pre-surgical care[18] and the amount "allowed" was left blank for the surgery.[19] See id. at 574.

From these letters, the Plaintiff argues that the Defendant accepted the part of the 2021 proposal that had it paying around $92,000.

But the Defendant's acceptance of one line item (about pre-surgical care) cannot bind the Defendant to acceptance of another line item (about the actual surgery) that it had specifically refused to pay --- in the first letter by saying $0.00 was to be the "allowed" amount, and in the second letter by leaving the "allowed" amount blank.

After all, there always needs to be a match between offer and acceptance. See Restatement (Second) of Contracts §§ 50(1), 58 (1981).[20]

And here, there is no match between (i) the Plaintiff's offer to take $92,400 to cover both the pre-surgical care and the surgery, and (ii) the Defendant's response --- acceptance (yes

---

18 The pre-surgical care was not identified in words but by CPT code 99221.

19 The primary surgical procedure was identified in the second letter by its CPT code, 15734.

20 See, e.g., Berrada v. Cohen, 792 F. App'x 158, 161-62 (3d Cir. 2019) (no contract when certain terms were crossed out in purported acceptance); see also Shaffer v. BNP/Cooper Neff, Inc., 1998 WL 575135, at *5 (E.D. Pa. Sep. 4, 1998); Meridian Mortg. Corp. v. Spivak, 1992 WL 198442, at *2 (E.D. Pa. Aug. 10, 1992).

to $320 for the pre-surgical care) and rejection (no payment for the surgery itself).[21]

* * *

In sum, the Plaintiff's negotiated-rate argument does not establish a right to benefits --- because there is no evidence that the Defendant accepted the negotiated rate.

### B. Arbitrary and Capricious

Turn now to the Plaintiff's other argument as to why he should get summary judgment and why the Defendant should not.[22]

The Plaintiff contends that the Defendant's final decision to pay $5,299.57 for the surgery[23] violated ERISA, because the process used to get there was arbitrary and capricious.[24] See Plaintiff's Brief at 22-29; Plaintiff's Response Brief at 29-38.

---

[21] Whether the Plaintiff is entitled to $320 for the pre-surgical care is an issue the Court does not take up. The Plaintiff did not exhaust his remedies as to that code. See footnote 11.

[22] The Plaintiff did not plead this legal theory in the operative complaint. The Defendant may possibly have alluded to this failing. See Defendant UnitedHealthcare Insurance Company's Supplemental Brief in Support of Its Motion for Summary Judgment (ECF 74) at 1 & n.2. But the Defendant presses no waiver or forfeiture argument based on it.

[23] The Plaintiff sought payment for other procedures and services, too. See footnote 11. Because those were not exhausted, the Court does not consider the process as to those.

[24] The parties agree that the Court should review the Defendant's denial of the Plaintiff's claim for abuse of discretion --- which, in the ERISA context, amounts to arbitrary-and-capricious review. See Plaintiff's Brief at 10; Defendant's Brief at 18; see also Miller v. Am. Airlines, Inc., 632 F.3d 837, 844-45 & n.2 (3d Cir. 2011). The Court follows the parties' lead and applies the abuse-of-discretion/arbitrary-and-capricious standard. (But note that the standard of review may at times be different. See Gritzer v. CBS, Inc., 275 F.3d 291, 295-96 (3d Cir. 2002) (applying a de novo standard when an insurance company did not respond until after litigation got underway). Whether Gritzer applies here, where an insurance company is slow to respond to an internal appeal --- that is a

In support of this, the Plaintiff points to three things about that process: (i) that the Defendant changed its mind at various points; (ii) the Defendant's determination to pay $5,299.57 was not explained; and (iii) that the Defendant provided inconsistent explanations throughout the process. See Plaintiff's Response Brief at 30-38.[25]

In particular, after the Defendant issued the two letters that were discussed in Part III.A., the Defendant apparently brought in another third-party entity, called Data iSight. See Administrative Record at 501-02, 588-89. The Defendant then changed course a bit --- and indicated that it would pay $5,299.57 on the larger bill. See id. at 501-02, 588-89.

The Defendant's explanation for the $5,299.57 payment: it would be in keeping with the Patient's "BENEFITS AND DATA PROVIDED BY DATA ISIGHT." Id. at 501-02, 588-89.

But this is not much to go on. Nothing about the criteria used by Data iSight. The information it looked to. Or how Data iSight applied its criteria to the information it had.

This lack of explanation[26] may be relevant to the Court's overall arbitrary-and-capricious analysis. See Rizzo v. First Reliance Standard Life Ins. Co., 2022 WL 17729430, at *5-6 (3d Cir. Dec. 16, 2022); Miller v. Am. Airlines, Inc., 632 F.3d 837, 853-56 (3d Cir. 2011); Muccino v. Long Term Disability Income Plan for Choices Eligible Emps. of Johnson & Johnson, 2013 WL 1615608, at *4-5 (D.N.J. Apr. 12, 2013); see also Greater Yellowstone Coal., Inc. v. Servheen, 665 F.3d 1015, 1028 (9th Cir. 2011) (if a

---

question the Court does not take up, because the parties do not raise it).

[25] All of this must be assessed as a whole, with no piece taken up in isolation. See Miller, 632 F.3d at 855.

[26] No added clarity is provided by the Defendant's invocation of the plan's statement that procedures can be covered based on a "fee schedule established by a third-party vendor" --- in part because there is nothing in the administrative record as to Data iSight's fee schedule. See Defendant UnitedHealthcare Insurance Company's Opposition to Plaintiff's Motion for Summary Judgment (ECF 55) at 6-7, 33-34 (citing Administrative Record at 15, 141).

decisionmaker does not "rationally explain" its decision, the Court "might as well be deferring to a coin flip").

To decide, on an overall basis, whether the process here was arbitrary and capricious, the Court will need to understand what Data iSight did and why it did it.

But the administrative record is silent on that.

As to how to proceed in this circumstance, the Court will issue a separate order today.

## IV. Conclusion

The Plaintiff's motion at ECF 42 is denied, and the Defendant's motion at ECF 45 is granted --- as to the Plaintiff's claims for recovery as to work performed under CPT Codes 13101, 13102, and 99221.

The Plaintiff's motion at ECF 42 is denied, and the Defendant's motion at ECF 45 is granted --- to the extent that the Plaintiff contends that the 2021 proposal (as described above) binds the Defendant.

As to the arbitrary-and-capricious aspects of ECF 42 and ECF 45, an order will issue today.

IT IS on this 22nd day of September, 2026, **SO ORDERED.**

Michael E. Farbiarz, U.S.D.J.